

**⌐FILED**

**MAY 3 0 2008**
May 30, 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA L. MACK<br>(a/k/a/ LYNNE L. MACK),<br><br>Plaintiff,<br><br>v.<br><br>BARRY S. MARAM, in his<br>official capacity as Director<br>of the Illinois Department of<br>Healthcare and Family Services<br><br>and<br><br>CAROL L. ADAMS, in her<br>official capacity as Secretary<br>of the Illinois Department of<br>Human Services,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>) VERIFIED COMPLAINT<br>)<br>)<br>)    **08CV3127**<br>)  **JUDGE KENNELLY**<br>)  **MAG. JUDGE COX**<br>)<br>) |

### INTRODUCTION

1. Linda L. Mack, a/k/a Lynne L. Mack, (hereinafter "Ms. Mack") is currently an inpatient resident at Brentwood North Nursing and Rehab, 3705 Deerfield Road, Riverwoods, IL 60015 (hereinafter "the nursing home"). She at all times prior to its sale on November 29, 2006 was the owner of 1653 Tahoe Circle Drive, Wheeling, IL 60090 (hereinafter "Ms. Mack's home").

2. Ms. Mack is bringing this action against Barry S. Maram (hereinafter "Maram"), in his official capacity as Director of the Illinois Department of Healthcare and Family Services (hereinafter "HFS") and against Carol L. Adams, (hereinafter "Adams") in her official capacity as Secretary of the Illinois Department of Human Services (hereinafter "DHS").

3. Maram placed a lien on Ms. Mack's home without proper notice and opportunity to be heard on the issue of whether Ms. Mack could "reasonably be expected to be discharged from the nursing home and to return home." 42 U.S.C. §1396p(a)(1)(b)(ii).

4. On November 29, 2006, Ms. Mack signed and Attorney's Title Guaranty Fund, Inc (hereinafter "ATG") accepted the "Personal Undertaking With Title Indemnity Deposit Agreement" (hereinafter "the TI Agreement") No. OMC 060600900087. A copy of the TI Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference.

5. Pursuant to the TI Agreement, the amount of $35,000.00 (hereinafter "the TI deposit") was withheld from Ms. Mack's sale proceeds and held in the TI escrow by ATG to indemnify ATG for the "St(ate) of Ill(inois) Dep(artment) of Healthcare & Family Services (lien)" (parenthetical insertions added).

6. The funds in the TI escrow are therefore not available or accessible to Ms. Mack.

7. Ms. Mack brings this action for a declaration by this Court that Maram's lien on Ms. Mack's home is and was invalid, and other relief.

8. No proceeding on this issue is pending before the Cook County Circuit Court or in any other state or federal court or administrative agency.

## JURISDICTION

9. This Court has jurisdiction of this action under 28 U.S.C. §1331, and this action arises under the federal Medicaid statute (42 U.S.C. §1396p), under the 14th Amendment of the United States Constitution, and 42 U.S.C. §§ 1983 and 1988.

## VENUE

10. Defendants Maram and Adams have offices and do business in Chicago, Cook County, Illinois, and therefore venue in this judicial district is proper under 28 U.S.C. §§1391(b) (1) and 139(b)(2).

## THE PARTIES

11. Ms. Mack, at all relevant times in this action owned, occupied, and/or has intended to return to her home at 1653 Tahoe Circle Drive, in Wheeling, Cook County, Illinois (hereinafter "Ms. Mack's home), and since its sale has resided at the nursing home.

12. Defendant Maram is Director of HFS, which has one of its principal offices in Chicago, Cook County, Illinois, within the Northern District of Illinois Eastern Division.

13. As Director, he is responsible for supervising the activities of HFS, including management of the Medicaid program once eligibility has been determined.

14. Defendant Adams is Secretary of DHS, which has one of its principal offices in Chicago, Cook County, Illinois, within the Northern District of Illinois Eastern Division.

15. As Secretary, Adams is responsible for supervising the activities of DHS, including its determination of eligibility for the Medicaid program, and appeals of Medicaid denials.

16. Attorney' Title Guaranty Fund, Inc, (hereinafter "ATG"), is not a party to this action, and is an Illinois domestic corporation.

## FACTS

17. Ms. Mack is 59 years of age. She is permanently disabled from right side paralysis and she is confined to a wheelchair.

18. Ms. Mack is a recipient of Medicaid under HFS Case Number 93-057-090756.

19. Ms. Mack has been a resident of Brentwood North Nursing & Rehab, 3705 Deerfield Road, Riverwoods, IL 60025 (hereinafter "the nursing home") moreorless continuously since April of 2005.

20. Ms. Mack repeatedly has expressed a desire to return to her aforesaid home.

21. Ms. Mack asserts that her efforts to return to her home have been delayed or prevented by her need for a medical van to transport her to physical therapy offsite from the

location of the nursing home, and by defendant Maram's failure, refusal, or inability to provide Ms. Mack with this offsite therapy.

22. In addition, Ms. Mack's ability to return to her home has been delayed or prevented by defendant Maram's failure, refusal or inability to provide Ms. Mack with a motorized wheelchair.

23. On September 29, 2006, the HFS local office in Lake County (Park City) , Illinois (hereinafter "HFS office") sent to Ms. Mack a "Notification of Intent to File a Lien" (hereinafter "HFS Notice"). A copy of the HFS notice is attached hereto as Exhibit 2 and is incorporated herein by reference.

24. The HFS notice stated, in part, that under 305 ILCS §§ 5/3-10 and/or 5-13.5 that Defendant Maram had the **right** (emphasis added) to place a lien on Ms. Mack's home.

25. Upon information and belief, on or about September 29, 2006 the HFS office sent to Ms. Mack by First Class United States Mail, said HFS notice.

26. The HFS notice also states, in part that; "…Because you have lived in a medical institution for at least 120 days, we presume you cannot reasonably be expected to be discharged and return home. Consequently, we intend to file a lien against your real property."

27. On October 31, 2006, the HFS office filed a "Notice and Claim of Lien" (hereinafter "lien") against Ms. Mack's home.

28. This lien was recorded with the Recorder of Deeds in Lake County, Illinois, as document number 0630418095. The lien is attached hereto as Exhibit 3 and is incorporated herein by reference

29. An undated "Notification of Lien" (hereinafter "lien notification") appears to have been mailed to Ms. Mack on or around the time of the recording of the lien or shortly afterward. The lien notification is attached hereto as Exhibit 4 and is incorporated herein by reference.

4

30.  On November 29, 2006, a letter appears to have been sent by Steve Bozee, Field Consultant, Liens and Estate Unit at the local HFS office (hereinafter "Bozee letter"), to one of Ms. Mack's attorney, Steven C. Perlis. The Bozee letter stated that "the actual amount of cash and/or medical assistance issued to Lynne Mack during the period from February 2006 through 11/29/2006 is $22,861.26. Upon payment of the above to the Illinois Department of Healthcare and Family Services, a release will be issued for all liens the Department has filed against the property for the client, namely Document(s) 0603418095". The Bozee letter is attached hereto as Exhibit 5 and is incorporated herein by reference.

31.  On January 5, 2007, HFS Assistant General Counsel Daniel Leikvold (hereinafter "Leikvold") wrote to attorney Perlis, and stated "I discussed this matter with the Bureau of Collections, which handles liens for the Department. We agree that there is no basis for the Department to waive or release its lien in this case".  Leikvold's letter to attorney Perlis is attached hereto as Exhibit 6 and is incorporated herein by reference.

32.  Illinois Public Aid Code § 3-10 [305 ILCS 5/3-10] provides, in part, that the Medicaid agency may impose a lien on the legal or equitable interests of recipients in real property, under certain terms and conditions, and in respect to which interests a notice of lien has been recorded or filed as provided in Sections 3-10.2 and 3-10.3 of the Public Aid Code. A copy of Section 3-10 of the Public Aid Code is attached hereto as Exhibit 7 and is incorporated herein by reference.

33.  Illinois Public Aid Code § 5-13.5 [305 ILCS 5/5-13.5] provides, in part, as follows:

> "Sec. 5-13.5. Lien on real property interests. The State shall have a lien on all legal and equitable interests of recipients in real property, whether vested or contingent, including legal and equitable rights and interests of the recipient to coal, gas, oil, iron, and other underground mineral resources, for medical assistance paid under this Article and for payments made to preserve the lien, **to the**

**extent those liens are allowed under the federal Social Security Act.** (emphasis added)…"

34. On November 29, 2006, Ms. Mack's home was sold at a residential closing. The closing statement from said sale is attached hereto as Exhibit 8 and is incorporated herein by reference.

35. The closing statement contains a handwritten note on the bottom that Ms. Mack's proceeds are "less $35,000 TI escrow and $150 title costs."

36. Also on November 29, 2008 a "Settlement Statement" was executed between Ms. Mack, as Seller, and Michael A. Mollerdino and Kimberly H. Mack, as Borrowers, with ATG providing a Settlement Agent Certification on said Settlement Statement. A copy of the Settlement Statement is attached hereto as Exhibit 9 and is incorporated herein by reference.

## STATUTORY AND REGULATORY BACKGROUND

37. 42 U.S.C. § 1396p(a)(1) provides that prior to the death of an individual who is an inpatient in a nursing home, a lien may be imposed on the real property of that individual, on account of Medicaid paid or to be paid on the individual's behalf, only after the state determines "after notice and opportunity for a hearing (in accordance with procedures established by the State), that [the individual] cannot reasonably be expected to be discharged from the [nursing home] and to return home." 42 U.S.C. § 1396p(a)(1)(B) (ii).

38. 42 C.F.R. § 433.36(g)(2)(ii) provides that the Medicaid agency may impose a lien on the real property of an individual who is an inpatient in a nursing home on account of the Medicaid paid on the individual's behalf only if "[t]he [Medicaid] agency determines that he or she cannot reasonably be expected to be discharged and return home. The agency must notify the individual of its intention to make that determination and provide an opportunity for a hearing in accordance with State established procedures **before the determination is made** (emphasis

6

added). This notice to an individual must include an explanation of liens and the effect on an individual's ownership of property."

39. The Illinois State Medicaid Plan (hereinafter "State Plan") has been submitted to the federal Center for Medicare and Medicaid Services (hereinafter "CMS").

40. Said State Plan does not contain any reference, per se, to a procedure in which institutionalized individuals are given notice that Defendant HFS intends to make a determination as to whether such individuals can reasonably be expected to be discharged and return home.

41. Likewise, said State Plan does not contain any reference to a procedure for a hearing prior to such a determination.

42. Rather said State Plan only provides for a general notification, on the back page of the HFS notice attached hereto as Exhibit 2, and which states as follows:

"YOU HAVE THE RIGHT TO APPEAL THIS DECISION

At any time within 60 days following the "Date of Notice" which appears on the front of this form, you have the right to appeal this decision and be given a fair hearing….."

## FIRST STATEMENT OF CLAIM

43. By virtue of the foregoing, Ms. Mack alleges that Defendants Maram and Adams have violated and are violating 42 U.S.C. § 1396p (a) (1) (B) (ii), as well as 42 C.F.R. §§ 433.36(d) and 433.3(g)(2)(ii).

## SECOND STATEMENT OF CLAIM

44. Ms. Mack repeats and realleges each and every allegation set for forth in Paragraphs 1 through 43 above as though fully set forth herein.

45. By virtue of the foregoing, Defendants Maram and Adams have violated and are violating Ms. Mack's right to procedural due process under the Due Process Clause of the Fourteenth (14th) Amendment of the United States Constitution.

### THIRD STATEMENT OF CLAIM

46. Ms. Mack repeats and realleges each and every allegation set forth in Paragraphs 1 through 45 above as though fully set forth herein.

47. By virtue of the foregoing, Defendants Maram and Adams have violated and are violating Ms. Mack's right to procedural due process under the Due Process Clause of the Illinois State Constitution.

**WHEREFORE**, Plaintiff, Linda L. Mack (a/k/a Lynne L. Mack) prays for a judgment:

1. Declaring that the lien placed by Defendant Maram on Ms. Mack's home was and is invalid.

2. Ordering Defendants Maram and Adams to release any and all claims and/or liens on the proceeds of the sale of Ms. Mack's home that are currently being held in a TI escrow by ATG, and ordering Defendants Maram and Adams to inform ATG of said release.

3. Awarding Ms. Mack costs, reasonable attorney's fees, and penalties for unreasonable and vexatious conduct pursuant to 42 U.S.C. §1988 and other provisions of law.

4. Awarding Ms. Mack such other and further relief as this Court deems just, proper, and necessary.

Respectfully submitted,

_____

LINDA L. MACK (a/k/a LYNNE L. MACK)

8

COUNTY OF COOK                )
                             ) SS
STATE OF ILLINOIS             )

### VERIFIED SIGNATURE UNDER OATH BY PLAINTIFF

I, **Linda L. Mack (a/k/a Lynne L. Mack)**, being first duly sworn under oath, state and

affirm that I am the Plaintiff in the above-entitled action.  I have read and am thoroughly familiar

with the said Verified Complaint.  The foregoing Verified Complaint is true according to the best

of my knowledge, information, and belief.  I declare under penalty of perjury that the foregoing is

true and correct.

Executed at Brentwood North Nursing & Rehab, 3705 Deerfield Road, Riverwoods, IL,

on May 27, 2008.

_____
LINDA L. MACK (a/k/a LYNNE L. MACK)

**SUBSCRIBED AND SWORN TO BEFORE ME** this 27th day of May, 2008. On the above
day came Linda L. Mack (a/k/a Lynne L. Mack) who at the above place and  date signed her
name  to the within Verified Complaint.

_____
Notary Public
My commission expires June 5, 2009

OFFICIAL SEAL
STEVEN C PERLIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:06/05/09

Respectfully Submitted,

ELDER LAW OFFICE OF STEVEN C. PERLIS & ASSOCIATES

By:    _____
STEVEN C. PERLIS, one of her attorneys

STEVEN C. PERLIS
HELEN MESOLORAS
ELDER LAW OFFICE OF STEVEN C. PERLIS & ASSOCIATES, P.C.
3345 N. Arlington Heights Road, Suite D
Arlington Heights, IL 60004-1531
Attorneys' Phone No. 847-818-1138
Attorneys for Plaintiff

## LIST OF EXHIBITS

1. Attorneys' Title Guaranty Fund, Inc. - Personal Undertaking With Title Indemnity Deposit Agreement

2. Illinois Department of Healthcare and Family Services - Notification of Intent To File a Lien

3. State of Illinois Department of Healthcare and Family Services – Lien

4. Illinois Department of Public Aid – Notification of Lien

5. Letter dated November 29, 2006, from Steve Bozee, Field Consultant, Liens and Estate Unit

6. Letter dated January 5, 2007, from Daniel Leikvold, HFS Assistant General Counsel

7. Illinois Public Aid Code § 3-10 [305 ILCS 5/3-10]

8. Closing Statement for 1653 Tahoe Circle Drive, Wheeling, Illinois

9. Settlement Statement for 1653 Tahoe Circle Drive, Wheeling, Illinois

**EXHIBIT 1**

06-857 T

# ATTORNEYS' TITLE GUARANTY FUND, INC.

## PERSONAL UNDERTAKING WITH TITLE INDEMNITY DEPOSIT AGREEMENT

Attorneys' Title Guaranty Fund, Inc. (ATG*) is about to issue its title insurance policy with respect to the land described in ATG's

Commitment to Insure: OMC _06 060090008 7_

ATG has noted as exception(s) on Schedule B of the above commitment (all referred to as Exceptions) the following:

# 20 _St of Ill Dep of Healthcare & Family Services_

ATG has been asked to issue its title insurance policy or policies, either deleting the Exceptions or insuring against loss by reason of them.

ATG may issue either concurrently with this Personal Undertaking with Title Indemnity Deposit Agreement (the Agreement) or later and in the ordinary course of its business a title insurance policy or policies in the form or forms now or then used by ATG, either deleting the Exceptions or insuring against loss by reason of them or may be subject to liability by reason of other title companies issuing policies free of or insuring against the Exceptions.

In consideration of the issuance of the title insurance policy or policies, the undersigned, jointly and severally, for themselves, their heirs, personal representatives and assigns, covenant with ATG:

1. To forever defend and save ATG harmless from all the Exceptions, from any loss, costs, damages, attorneys' fees, and expenses of every kind that ATG may suffer, expend, or incur under, or by reason of, the title insurance policy, on account of the Exceptions, or any of them, or on account of the assertion or enforcement or attempted assertion or enforcement thereof, or of any rights existing or later arising out of, or that may at any time be claimed to exist under, the Exceptions or any of them;

2. To provide for the defense, at their own expense, on behalf of ATG and the parties to whom ATG may be liable against loss under the title insurance policy (but without prejudice to the right of ATG to defend if it elects) in all litigation consisting of actions based on any of the Exceptions that may be asserted, established, or enforced in respect to the land or any interest therein;

3. To discharge, eliminate, or satisfy all of the Exceptions by the following date: _6/1/07_     _12/1/07_  _PAID_

4. That each provision of this Agreement shall be in force concerning all commitments and policies, whether issued by ATG or other title insurance companies where ATG may ultimately be liable by reason of subrogation or otherwise.

The undersigned deposits with ATG the sum of $ _25,000.00_  (the Deposit). The Deposit shall be under the absolute control of ATG to indemnify ATG as provided in this Agreement.

ATG shall have the right at any time, when it shall deem it in its interest so to do, in its sole discretion to use the Deposit in such manner and in such amounts as ATG believes necessary for the discharge, elimination, or satisfaction of any of the Exceptions, or for the purpose of acquiring any Exceptions, or for the purpose of reimbursing anyone who may have removed any Exceptions, or to reimburse ATG for any and all loss, costs, damages, attorneys' fees, and expenses of every kind that ATG may incur by reason of the title insurance policy on account of the Exceptions, or on account of the assertion or enforcement or attempted assertion or enforcement thereof, or of any rights existing under or later arising out of, or that may at any time be claimed to exist under, the Exceptions or any of them. If the Deposit has been made for purposes of deleting or insuring against loss by reason of an Exception for an Illinois revenue lien or liens, ATG shall apply the Deposit in satisfaction or release of the Exception upon written demand therefor by the Illinois Department of Revenue.

In case of litigation involving this Agreement, the costs and attorneys' fees of ATG may be paid or retained by ATG out of the Deposit. If the Deposit is insufficient, the costs and attorneys' fees shall be paid by the undersigned.

# ATTORNEYS' TITLE GUARANTY FUND, INC.

## PERSONAL UNDERTAKING WITH TITLE INDEMNITY DEPOSIT AGREEMENT
### (continued)

If ATG shall find that its liability shall have increased for any reason, ATG may call on the undersigned for an additional deposit sufficient to indemnify ATG against the increase in liability. In that event, the undersigned shall promptly pay to ATG the requested deposit.

ATG shall be under no duty to invest the Deposit. ATG shall have the power and authority to commingle the Deposit with its other Deposits. All income derived from any use that ATG may make of any Deposits under this Agreement shall belong to ATG.

In the event there are other supposed rights, interests, liens, claims, encumbrances, or defects in title in addition to the Exceptions that create liability for ATG, ATG may use the Deposit to satisfy, in whole or in part, these additional matters.

In case: (1) any of the Exceptions are removed without the use of the Deposit to the satisfaction of ATG (as to which ATG shall be the sole judge); (2) any surplus remains in the hands of ATG after it shall have reimbursed itself for all loss, damages, or disbursements; the Deposit or surplus, after deducting the costs, fees for services and attorneys' fees, if any, of ATG shall on demand be paid to:

_Lynne Mack_    Taxpayer I.D. Number: _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_

The return of the Deposit shall not be construed as a termination or release of the Agreement nor any of the undersigned's duties or obligations under this Agreement. ATG SHALL BE ENTITLED TO FIVE WORKING DAYS NOTICE PRIOR TO ANY RELEASE OF FUNDS.

ATG shall not be under any obligation to recognize any assignment of the Deposit until the original or a signed duplicate of the assignment, accepted in writing by the assignee, is deposited with and accepted in writing by ATG.

The undersigned agrees to pay a handling charge in the amount of $ _150.00_ , under this Agreement. If the Exceptions are not discharged, eliminated, or satisfied within 30 calendar days of the date set forth in paragraph (3) on the preceding page, ATG shall thereafter charge an additional handling charge to be paid out of the Deposit, or if the Deposit is insufficient, paid by the undersigned. The charge under the preceding sentence shall be $25.00 or 10% of the amount deposited, whichever sum is greater, per year, or any part thereof.

The Deposit is for the purpose of security for the undersigned's performance of this Agreement. ATG's possession of the Deposit does not create any fiduciary obligation on the part of ATG for the benefit of the undersigned or any other party.

The failure of ATG to demand the performance by the undersigned of any duty or obligation under this Agreement shall not be construed as a waiver of ATG's right to demand performance at any later time. This Agreement is solely between ATG and the undersigned and is not intended to be nor shall it be construed to be for the benefit of any third party. This Agreement constitutes the entire agreement of and between ATG and the undersigned. Should any provision of this Agreement be held invalid or unenforceable by any court of competent jurisdiction, such finding shall not invalidate or render unenforceable any other provision contained herein.

Entered into this:

_27_ day of _November, 2006_
Day         Month         Year

_____         _____
Signature                        Signature

_32 w Busse Ave_               _____
Address                          Address

_Mt Prospect, Il 60056_        _____
City, State, Zip                 City, State, Zip

_847-577-8310_

Accepted by ATG

By: _____

ATG FORM 3011
© ATG (REV. 12/99)

FOR USE IN ALL STATES
Page 2 of 2

**EXHIBIT 2**

**fHFS** Healthcare and
Family Services

Rou K. Blagojevich, Governor

Bureau of Collections
Technical Recovery Section
2200 Churchill Road, Building A
Springfield, Illinois 62702-3406

**Telephone:** (217) 785-8711
**TTY:** (800) 526-5812

NOTIFICATION OF INTENT TO FILE A LIEN
09/29/2006

Lynne Mack
Brentwood North Nsg/Rehab
3705 Deerfield Road
Riverwoods, IL 60015

RE: 93-057-090756

We are writing to advise you that under State Law (305 ILCS 5/3-10 and/or 5/5-13.5), the Illinois Department of Healthcare and Family Services has the right to place a lien on real property you own. A lien is a legal claim on the real property. The Department places a lien on real property when:

* a person receives old age, blind or disability cash assistance; or

* a person receives old age, blind, or disability medical assistance and, because he or she has lived in one or more medical institutions for at least 120 calendar days, the Department presumes that he or she cannot reasonably be expected to be discharged and return home.

The lien is filed on homestead and non-homestead property. The amount of the Healthcare and Family Services lien is equal to:

* the amount of cash assistance paid out in your behalf; or

* if you live in a medical institution, the amount of medical assistance paid out in your behalf.

Because you have lived in a medical institution for at least 120 days, we presume you cannot reasonably be expected to be discharged and return home. Consequently, we intend to file a lien against your real property. This does not mean any action to sell your property will occur; rather, it means that if at any time there is a transfer of title to the real property (for example, when the property is sold or mortgaged), the Department will be paid on its lien.

If you do not understand this notice, talk to your caseworker or a person who can explain it to you. Your local Department of Human Services office telephone number is (847)336-4067.

Technical Recovery Manager

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

HFS 3419A (R-7-99)

IL478-2232

This action will not be taken if you can show that it is wrong. You may meet with a representative from your local DHS office to question this action. This meeting would be informal and you may present information or evidence. You may be represented by the person or persons of your choice. Whether or not you have such a meeting, you will still have the right to appeal the intended action.

## YOU HAVE THE RIGHT TO APPEAL THIS DECISION

At any time within 60 days following the "Date of Notice" which appears on the front of this form, you have the right to appeal this decision and be given a fair hearing. Your appeal request must be filed in writing or by calling (Toll Free) 1-800-435-0774. At the appeal hearing, you may represent yourself or be represented by anyone else such as a lawyer, relative or friend. Your local DHS office will provide you with an appeal form and will help you fill it out if you wish.

To apply for free legal help:

- In the City of Chicago – Legal Assistance Foundation of Chicago (312)341-1070; Outside the City of Chicago - consult your local telephone directory for the number of the nearest legal services office:
- In Cook County, outside the City of Chicago – Cook County Legal Assistance Foundation, Inc.;
- In Northern Illinois – Prairie State Legal Services or West Central Illinois Legal Assistance;
- In Southern Illinois – Land of Lincoln Legal Assistance Foundation, Inc.

**EXHIBIT 3**

**STATE OF ILLINOIS**
**DEPARTMENT OF**
**HEALTHCARE AND FAMILY SERVICES**

NOTICE AND CLAIM OF LIEN

[X] INITIAL LIEN

[ ] RENEWAL

DATE OF INITIAL LIEN
[          ]



Doc#: 0630418095 Fee: $26.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 10/31/2006 03:00 PM Pg: 1 of 1

Notice is hereby given that I, Linda Shumate, Acting, acting in my official capacity of Local Office Administrator for the County of Cook, State of Illinois, and my successors in office, hereby claim and intend to hold a lien on the following described real estate, to-wit:

Unit 2-10-01 together with its undivided percentage interest in the common elements in Tahoe Village Condominium as delineated and defined in the Declaration recorded as Document Number 22270823, as amended from time to time, in the North 1/2 of the South 1/2 of Section 9, Township 42 North, Range 11, East of the Third Principal Meridian, in Cook County, Illinois.

Property address: 1653 Tahoe, Wheeling, IL
PIN: 03-09-308-096-1138

A legal or equitable interest in said described real estate is owned by:
CLIENT NAME: **LYNNE MACK**                           CASE ID #: **93-057-090756**
ADDRESS: Brentwood North Nsg/Rehab, 3705 Deerfield Road, Riverwoods, IL 60015
This lien is claimed for all assistance paid to or on behalf of said client, under Article III and/or Article V of the Illinois Public Aid Code, and for payments made to preserve the said lien in accordance with statutory provisions.

DATE: 10/30/06                 _Linda M. Shumate_
                                              LOCAL OFFICE ADMINISTRATOR

State of Illinois            }
                                   } SS
County of Cook         }

PREPARED BY AND RETURN TO:
STEVE BOZEE
Field Consultant - Liens and Estates
3235 Belvidere Road
Park City, Illinois 60085

I, _ESTELL HARDIMAN_, Notary Public do hereby certify that Linda Shumate, Acting, Local Office Administrator, personally known to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that she/he signed the said instrument as required by law, for the uses therein set forth.

```
OFFICIAL SEAL
ESTELL HARDIMAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 01-21-07
```
(SEAL)

Given under my hand and seal this
30 day of October, A.D. 2006

_Estell Hardiman_
Notary Public

HFS 237 (R-3-2000)                                                    IL478-0208

Box 348

**EXHIBIT 4**



# Illinois Department of Public Aid

## NOTIFICATION OF LIEN

93-057-90756
CASE NUMBER

⌜Lynne Mack
c/o Brentwood North Nursing + Rehab.⌉
3305 Deerfield Rd.
Riverwoods, IL 60015
⌞                    ⌟

RE: Document 0630418095

We are writing to advise you that under State Law (305 ILCS 5/3-10 and/or 5/5-13.5), the Department of Public Aid must place a lien on real property when:

- a person receives old age, blind, or disability cash assistance; or

- a person receives old age, blind, or disability medical assistance and has lived in one or more medical institutions for at least 120 calendar days.

The lien is filed on homestead property and non-homestead property. The amount of the Department of Public Aid lien is equal to:

- the amount of cash assistance the Department pays out in your behalf; or

- the amount of medical assistance paid out in your behalf while you reside in a medical institution.

The Department of Public Aid has taken the following action:

☒ Filed an initial lien against your real property.

☒ Included in the lien already filed on your real property the amount of medical assistance paid out in your behalf while you reside in a medical institution.

This does not mean any action to sell your real property will occur; rather, it means that if and when the property is sold, Public Aid will be paid on its lien.

A copy of the lien filed against your real property is enclosed for your records.

If you have any questions, please contact your local Department of Human Services office.

**ILLINOIS DEPT. OF HUMAN SERVICES
LAKE COUNTY
3235 WEST BELVIDERE ROAD
PARK CITY, ILLINOIS 60085-6017**

Vicorta Yanelli
*Local Office Administrator*

Local Office Stamp

DPA 3419 (R-10-99)

1L478-2241

**EXHIBIT 5**



ILLINOIS DEPARTMENT OF
**Healthcare and
Family Services**

**Rod R. Blagojevich, Governor
Barry S. Maram, Director**

Bureau of Collections
Technical Recovery Section
3235 Belvidere Rd.
Park City, Illinois 60085-6017

**Telephone:** (847) 336-4067
**TTY:** (800) 526-5812
**Fax:** (847) 336-7266

November 29, 2006

Steve Perils, Attorney At Law
3345 N Arlington Heights Road, Suite D
Arlington Heights, IL 60004

Case Name:  Mack, Lynne
Case Number:  93-057-090756
Property Address:  1653 Tahoe, Wheeling, IL

Dear Mr. Perils,

In response to your recent request, we are advising you that the actual amount of cash and/ or medical assistance issued to Lynne Mack during the period of February 2006 through 11/29/2006 is $22,861.26.

Upon payment of the above to the Illinois Department of Healthcare and Family Services, a release will be issued for all liens the Department has filed against this property for this client, namely:

<u>Documents (s)</u>
0630416095

Payments should be made payable to the Illinois Department Healthcare and Family Services, and forwarded to 3235 W. Belvidere Rd., Park City, IL 60085-6017 attention: Steve Bozee, Field Consultant. Please enclose a copy of this letter and a copy of the closing statement with your remittance.

Sincerely,

Steve Bozee

Steve Bozee, Field Consultant
Liens and Estate Unit

**E-mail:** hfswebmaster@illinois.gov

**Internet:** http://www.hfs.illinois.gov/

**EXHIBIT 6**



**ILLINOIS D~ ~~~/ OF**
**Healthcare and**
**Family Services**

**Rod R. Blagojevich, Governor**
**Barry S. Maram, Director**

201 South Grand Avenue East
Springfield, Illinois 62763-0002

**Telephone:** (217) 782-1233
**TTY:** (800) 526-5812

January 5, 2007

Mr. Steven C. Perlis
3345 North Arlington Heights Rd., Suite D
Arlington Heights, Illinois 60004
www.perliselderlaw.com

Re:    Lynne Mack

Dear Steve:

This is in response to your letter requesting the Department waive its lien on property owned by your client, Lynne Mack. Your client intends to sell the property and wishes to place proceeds not used to pay for medical expenses into a pooled special needs trust.

I discussed this matter with the Department's Bureau of Collections, which handles liens for the Department. We agree that there is no basis for the Department to waive or release its lien in this case. Proceeds from the sale of property, including homestead property, are considered available to pay for the care of an individual. Such proceeds may be placed into a special needs trust, but any Department lien or charge must be satisfied first before such a trust can be exempted from consideration.

Sincerely,

Daniel  C. Leikvold
Assistant General Counsel

DCL:ds

cc: Janet Steele

**EXHIBIT 7**

305 ILCS 5/3-10

Sec. 3-10. Lien on real property interests. Subject to the provisions of Sections 3-10.1 to 3-10.10, inclusive, the State shall have a lien upon all legal and equitable interests of recipients in real property, whether vested or contingent, including legal and equitable rights and interests of the recipient to coal, gas, oil, iron and other underground mineral resources, for basic maintenance grants paid under this Article, and for payments made to preserve the lien as provided in Section 3-10.5. The lien shall attach to such interests owned or subsequently acquired by persons who were recipients on or after the effective date of this Code, and in respect to which interests a notice of lien has been recorded or filed as provided in Sections 3-10.2 and 3-10.3.

Liens recorded or filed under the provision of Article VIII-A of the 1949 Code for which the period of enforceability has not expired shall not be affected by the enactment of this Code.

**EXHIBIT 8**

LAW OFFICES
## NORMAN I. KURTZ, LTD.
A PROFESSIONAL CORPORATION
32 WEST BUSSE AVENUE
MT. PROSPECT, ILLINOIS 60056

(847) 577-8310
FAX (847) 577-4316

PROPERTY:             1653 Tahoe Circle Dr., Wheeling, IL
SELLERS:              Lynne Mack
SELLERS' ATTORNEY:    Norman I. Kurtz
BUYERS:               Kimberly Mack & Michael Mollerdino
BUYERS' ATTORNEY:     Edmund Wohlmuth
DATE OF CLOSING:      November 29, 2006
DATE OF POSSESSION:   November 29, 2006

## CLOSING STATEMENT

|  | CREDIT BUYER | CREDIT SELLER |
|---|---|---|
| PURCHASE PRICE |  | $195,000.00 |
| EARNEST MONEY | $ 1,000.00 |  |
| PAYOFF - U.S. Bank through 11/30/06 | 87,834.80 |  |
| REAL ESTATE TAXES (105%) |  |  |
| 2005 (paid in full $2,423.80) |  |  |
| 2006 - 1/1/06 through 11/29/06 |  |  |
| 333 days at $6.97 per day | 2,321.01 |  |
| REVENUE STAMPS |  |  |
| State | 195.00 |  |
| County | 97.50 |  |
| ASSOCIATION ($250.00/month) |  |  |
| 11/29/06 through 11/30/06 |  |  |
| 1 days at $8.33 per day |  | 8.33 |
| TAHOE VILLAGE CONDO ASSOCIATION |  |  |
| (assessment letter) | 400.00 |  |
| UPS (payoff) | 20.00 |  |
| SELLERS' TITLE CHARGES | 1,084.50 |  |
| SELLERS' ATTORNEY'S FEES | 600.00 |  |
| SUB-TOTAL: | $ 93,552.81 | $195,008.33 |
| CASH TO BALANCE: | 101,455.52 | -0- |
|  | $195,008.33 | $195,008.33 |

APPROVED: SELLER                    APPROVED: BUYERS

_____            _____

                                   _____

\* \* \* \* \* \* \* \* \* \* \*

SELLER'S SETTLEMENT:

EARNEST MONEY ON DEPOSIT ...... $ 1,000.00
CASH TO BALANCE ............... 101,455.52
TOTAL PROCEEDS FROM SALE ................... $102,455.52

_less $35,000 TI escrow_
_+ $150 TI title cost_

**EXHIBIT 9**

# ATTORNEYS' TITLE GUARANTY FUND, INC

Settlement Statement

| 1 South Wacker | 2408 Windsor Place | 2500 South Highland Ave | 120 West Main Street | 2. ☐ FmHA | 3. ☐ Conv Unins |
|---|---|---|---|---|---|
| 24th Floor | P.O. Box 9100 | Suite 355 | Suite 115 | | |
| Chicago, IL 60606-4654 | Champaign, IL 61826-9100 | Lombard, IL 60148-5363 | Belleville, IL 62220-1554 | | |
| (312) 372-8361 | (217) 359-2000 | (630) 627-7441 | (618) 277-8440 | | |

| | | |
|---|---|---|
| 4. ☐ VA | 5. ☐ Conv Ins. | 6. ☐ Seller Finance |

6. File Number 060600900087

7. Loan Number 02-21-3237)

8. Mortgage Ins Case Number

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. Name and Address of Borrower**
MICHAEL A. MOLLERDINO and KIMBERLY R. MACK

**E. Name, Address, and Tax ID Number of Seller**
LYNNE L. MACK
1653 Tahoe Circle Drive
Wheeling IL 60090

**F. Name and Address of Lender**
Hoyne Savings Bank
4786 North Milwaukee Avenue
Chicago IL 60630

**G. Property Location (Complete address, including legal description, if necessary)**
1653 TAHOE CIRCLE DRIVE
WHEELING, IL 60090

**H. Settlement Agent Name, Address and Tax ID Number**
Attorneys' Title Guaranty Fund, Inc.
2408 Windsor Place
Champaign, IL 61820
Tax ID: 37-1222610
Closer: KATHLEEN PELLEGRINI

Place of Settlement
ATG Mount Prospect
350 West Kensington Road, Suite 102
Mount Prospect, IL 60056

**I. Settlement Date**
11/29/2006
Fund:

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract Sales Price | $195,000.00 | 401. Contract Sales Price | $195,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $2,106.67 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. County property taxes | | 406. County property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. Special Assessment | $8.33 | 408. Special Assessment | $8.33 |
| 109. Homeowner Asc Dues 11/29/06 thru 11/30/06 | | 409. Homeowner Asc Dues 11/29/06 thru 11/30/06 | |
| 110. Flood insurance | | 410. Flood insurance | |
| 111. Other taxes | | 411. Other taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 120. Gross Amount Due From Borrower | $197,114.00 | 420. Gross Amount Due to Seller | $195,008.33 |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit of earnest money | $1,000.00 | 501. Earnest money held by seller | $1,000.00 |
| 202. Principal amount of new loan(s) | $186,000.00 | 502. Settlement Charges to Seller (line 1400) | $1,997.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan | $87,834.80 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Earnest money | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. County property taxes 01/01/06 thru 11/29/06 | $2,321.01 | 510. County property taxes 01/01/06 thru 11/29/06 | $2,321.01 |
| 211. County property taxes | | 511. County property taxes | |
| 212. Special Assessment | | 512. Special Assessment | |
| 213. Homeowner Asc Dues | | 513. Homeowner Asc Dues | |
| 214. Flood insurance | | 514. Flood insurance | |
| 215. Other taxes | | 515. Other taxes | $400.00 |
| 216. | | 516. Association Fees | $35,000.00 |
| 217. | | 517. Title Indemnity | $150.00 |
| 218. | | 518. T.I. Fee | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | $189,321.01 | 520. Total Reduction Amount Due Seller | $128,702.8 |
| 300. Cash At Settlement To/From Borrower | | 600. Cash At Settlement To/From Seller | |
| 301. Gross Amount due from borrower (line 120) | $197,114.00 | 601. Gross Amount due to seller (line 420) | $195,008.3 |
| 302. Less amount paid by/for borrower (line 220) | $189,321.01 | 602. Less reductions in amt. due seller (line 520) | $128,702.8 |
| 303. Cash From Borrower | $37,792.99 | 603. Cash To Seller | $66,305.8 |

Printed at: 4:35 PM November 29, 2006 HL

Previous Edition is Obsolete

L. Settlement Charges

| | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price $195,000.00 @ % = | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. | to | | |
| 702. | to | $0.00 | $0.00 |
| 703. Commission Paid at Settlement | | | |
| 800. Items Payable in Connection with Loan | | | |
| 801. Loan Origination Fee Percent | to | | |
| 802. Loan Discount | to | $250.00 | |
| 803. Appraisal Fee | to Hoyne Savings Bank | $100.00 | |
| 804. Credit Report | to Hoyne Savings Bank | | |
| 805. Lender's Inspection Fee | to | | |
| 806. Application Fee | to | | |
| 807. Assumption Fee | to | | |
| 808. Document Preparation Fee | to | | |
| 809. Tax Service Fee | to | $12.50 | |
| 810. Flood Certification Fee | to Hoyne Savings Bank | | |
| 900. Items Required by Lender To Be Paid in Advance | | $54.17 | |
| 901. Interest from 11/29/2006 to 11/30/2006 @ $27.08/day | | | |
| 902. Mortgage Ins Premium for months | to | | |
| 903. Hazard Ins Premium for years | | | |
| 904. 2005 Taxes | to Cook County Collector POC (S) $2,423.80 | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard Insurance | months @ per month | | |
| 1002. Mortgage Insurance | months @ per month | | |
| 1003. County property taxes | months @ per month | | |
| 1004. County property taxes | months @ per month | | |
| 1005. Special Assessment | months @ per month | | |
| 1006. Homeowner Asn Dues | months @ per month | | |
| 1007. Flood Insurance | months @ per month | | |
| 1008. Other taxes | months @ per month | | |
| 1011. Aggregate Reserve Adjustment | | | |
| 1100. Title Charges | | $825.00 | $0.00 |
| 1101. Closing/Escrow Fee | to ATG | $110.00 | $0.00 |
| 1102. Environmental Lien Protection Endorse. | to ATG/Norman I. Kurtz | | |
| 1103. ARM Endorsement | to | $110.00 | $0.00 |
| 1104. Condominium Blanket I Endorsement | to ATG/Norman I. Kurtz | | |
| 1105. Location Note | to | $450.00 | |
| 1106. Buyer's Attorney Fees | to Ed Wohlmuth | | $600.00 |
| 1107. Seller's Attorney Fees | to Norman I. Kurtz | | |
| (includes above items numbers: | ) | $250.00 | $975.00 |
| 1108. Title Charges | to ATG/Norman I. Kurtz | | |
| (includes above items numbers: | ) | | |
| 1109. Lender's coverage | $186,000.00 / $250.00 | | |
| 1110. Owner's coverage | $195,000.00 / $975.00 | | |
| 1111. Gap Risk Update | to ATG/Norman I. Kurtz | $70.00 | $70.00 |
| 1200. Government Recording and Transfer Charges | | $101.00 | |
| 1201. Recording Fee - Mortgage Deed $36.50 ; Mortgage $64.80 ; Release | | | $97.80 |
| 1202. County tax stamps Deed $97.50 ; Mortgage to ATG Fees and Transfers | | | $198.00 |
| 1203. State tax stamps Deed $195.00 ; Mortgage to ATG Fees and Transfers | | | |
| 1204. City tax stamps | to | | |
| 1205. Record Assignment of Mortgage | to | 50.00 | $36.50 |
| 1206. Release Status Verification Fee | to ATG Fees and Transfers | $3.00 | $3.00 |
| 1207. State Regulatory Fee | to ATG Fees and Transfers | | $20.00 |
| 1208. Payoff Handling Delivery Fee | to ATG Fees and Transfers | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey | to | | |
| 1302. Pest Inspection | to | $40.00 | |
| 1303. Courier Fee | to KATHLEEN PELLEGRINI | | |
| 1304. | to | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | $2,105.67 | $1,997.00 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1 to 7 of this HUD-1 Settlement Statement.

_____
MICHAEL A. MOLLERDINO

_____
LYNNE L. MACK

_____
KIMBERLY H. MACK

### SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

_____          _____
              Settlement Agent                        Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Special Instructions: _____

**SELLER INSTRUCTIONS:** If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252, and/or Schedule D (Form 1040)

### ATTORNEYS' TITLE GUARANTY FUND, INC.

Previous Edition is Obsolete HUD-1 (3/91)