## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LINDA L. MACK** | ) | |
| **(a/k/a LYNNE L. MACK),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  08 C 3127** |
| | ) | |
| **BARRY S. MARAM, in his official** | ) | **Judge Kennelly** |
| **capacity as Director of the Illinois** | ) | |
| **Department of Healthcare and** | ) | **Magistrate Judge Cox** |
| **Family Services, and** | ) | |
| **CAROL L. ADAMS, in her official** | ) | |
| **capacity as Secretary of the Illinois** | ) | |
| **Department of Human Services;** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

NOW COME Steven C. Perlis and Helen Mesoloras, of the Elder Law Office of Steven C. Perlis and Associates, P.C., Attorneys for Plaintiff, Linda L. Mack, a/k/a Lynne L. Mack, and respectfully state:

### INTRODUCTION

1.      Linda L. Mack, a/k/a Lynne L. Mack, (hereinafter "Ms. Mack") is currently an inpatient resident at Brentwood North Nursing and Rehab, located at 3705 Deerfield Road, Riverwoods, IL 60015 (hereinafter "the nursing home").

2.      At all times prior to its sale on November 29, 2006, she was the owner of 1653 Tahoe Circle Drive, Wheeling, IL 60090 (hereinafter "Ms. Mack's home").

3.      Ms. Mack is bringing this action against Barry S. Maram (hereinafter

"Maram"), in his official capacity as Director of the Illinois Department of Healthcare and

Family Services (hereinafter "HFS"), and against Carol L. Adams (hereinafter "Adams"), in her

official capacity as Secretary of the Illinois Department of Human Services (hereinafter "DHS").

4.    On November 29, 2006, Ms. Mack signed a Personal Undertaking With Title

Indemnity Deposit Agreement (hereinafter "the TI Agreement") No. OMC 060600900087 with

Attorneys' Title Guaranty Fund (hereinafter "ATG"). A copy of the TI Agreement is attached

hereto as Plaintiff's Complaint Exhibit 1 and is incorporated herein by reference.

5.    Pursuant to the TI Agreement, the amount of $35,000.00 (hereinafter "the TI

deposit") was withheld from Ms. Mack's sale proceeds and held in the TI escrow by ATG to

indemnify ATG for the "St(ate) of Ill(inois) Dep(artment) of Healthcare & Family Services

(lien)" (parenthetical insertions added). The remaining portion of the sale proceeds were placed

into a special needs trust account with Life'sPlan, Inc. for Ms. Mack.

6.    Ms. Mack brings this action for declaratory judgment by this Court against HFS

and DHS and other relief based upon the invalidity of the Medicaid lien imposed by HFS.

7.    No proceeding on this issue is pending before the Cook County Circuit Court or in

any other state or federal court or administrative agency.

## JURISDICTION

8.    This Court has jurisdiction of this action under 28 U.S.C. §1331. This action

arises under the federal Medicaid statute (42 U.S.C. §1396p), and the 14th Amendment of the

United States Constitution.

## VENUE

9.    Defendants Maram and Adams have offices and do business in Chicago, Cook

County, Illinois, and elsewhere throughout Illinois, and therefore venue in this judicial district is

proper under 28 U.S.C. §§1391(b) (1) and 1391(b) (2).

## THE PARTIES

10.    Ms. Mack owned 1653 Tahoe Circle Drive, in Wheeling, Cook County, Illinois (hereinafter "Ms. Mack's home"), and since its sale on November 29, 2006, has resided at the nursing home.

11.    Defendant Maram is acting in his official capacity as Director of HFS, which has one of its principal offices in Chicago, which is in Cook County, Illinois.  This office is within the Northern District of Illinois Eastern Division.  His agency, HFS, is responsible, among other things, for management of the Medicaid program once eligibility has been determined.

12.    Defendant Adams is acting in her official capacity as Secretary of DHS, which has one of its principal offices in Chicago, Cook County, Illinois, within the Northern District of Illinois Eastern Division.  Her agency, DHS, is responsible, among other things, for making determinations of eligibility for the Medicaid program, as well as for conducting appeals of Medicaid decisions throughout Illinois.

13.    Attorneys' Title Guaranty Fund, Inc., is not a party to this action, and is an Illinois domestic corporation.

## FACTS

14.    Ms. Mack is a recipient of Medicaid under HFS Case Number 93-057-090756.

15.    Ms. Mack has been a resident of Brentwood North Nursing & Rehab, 3705 Deerfield Road, Riverwoods, IL 60025 (hereinafter "the nursing home") moreorless continuously since April of 2005.

16.    On September 29, 2006, the HFS Bureau of Collections Technical Recovery Section sent to Ms. Mack a "Notification of Intent to File a Lien" (hereinafter "HFS Notice").

17.    The HFS Notice is attached hereto as Plaintiff's Complaint Exhibit 2 and is incorporated herein by reference.

3

18.    The HFS Notice states, in part, that under 305 ILCS §§ 5/3-10 and/or 5-13.5 that HFS has the **right** (emphasis added) to place a lien on Ms. Mack's home.

19.    The HFS notice also states, "…Because you have lived in a medical institution for at least 120 days, we presume you cannot reasonably be expected to be discharged and return home. Consequently, we intend to file a lien against your real property."

20.    An undated "Notification of Lien" appears to have been mailed to Ms. Mack by the Lake County, Illinois, HFS office. The lien notification is attached hereto as Plaintiff's Exhibit 3 and is incorporated herein by reference

21.    This lien is dated October 30, 2006 and was recorded on October 31, 2006 with the Recorder of Deeds in Cook County, Illinois, as document number 0630418095. The lien is attached hereto as Plaintiff's Complaint Exhibit 4 and is incorporated herein by reference

22.    A letter dated November 29, 2006 was sent by Steve Bozee, Field Consultant, Liens and Estate Unit at the Lake County, Illinois, HFS office (hereinafter "Bozee letter"), to one of Ms. Mack's attorneys, Steven C. Perlis. The Bozee letter again referenced the document number of the lien and stated that "the actual amount of cash and/or medical assistance issued to Lynne Mack during the period from February 2006 through 11/29/2006 is $22,861.26. Upon payment of the above to the Illinois Department of Healthcare and Family Services, a release will be issued for all liens the Department has filed against the property for the client, namely Document(s) 0603418095". The Bozee letter is attached hereto as Plaintiff's Complaint Exhibit 5 and is incorporated herein by reference.

23.    On November 29, 2006, Ms. Mack's home was sold at a residential closing. The closing statement from said sale is attached hereto as Plaintiff's Complaint Exhibit 6 and is incorporated herein by reference.

24.    The closing statement contains a handwritten note on the bottom that Ms. Mack's proceeds are "less $35,000 TI escrow and $150 title costs."

25.    Also on November 29, 2006, a "Settlement Statement" was executed between Ms. Mack, as Seller, and Michael A. Mollerdino and Kimberly H. Mack, as Borrowers, with ATG providing a Settlement Agent Certification on said Settlement Statement. A copy of the Settlement Statement is attached hereto as Plaintiff's Complaint Exhibit 7 and is incorporated herein by reference.

26.    HFS Assistant General Counsel Daniel Leikvold (hereinafter "Leikvold") wrote to attorney Perlis in a letter dated January 5, 2007, and stated, "I discussed this matter with the Bureau of Collections, which handles liens for the Department. We agree that there is no basis for the Department to waive or release its lien in this case". Leikvold's letter to attorney Perlis is attached hereto as Plaintiff's Complaint Exhibit 8 and is incorporated herein by reference.

## STATUTORY AND REGULATORY BACKGROUND

27.    Illinois Public Aid Code § 3-10 [305 ILCS 5/3-10] provides, among other things, that HFS may impose a lien on the legal or equitable interests of recipients in real property.

28.    A copy of Section 3-10 of the Public Aid Code is attached hereto as Plaintiff's Complaint Exhibit 9 and is incorporated herein by reference.

29.    Illinois Public Aid Code § 5-13.5 [305 ILCS 5/5-13.5] also provides that the Medicaid agency may impose a lien on the legal or equitable interests of recipients in real property.

30.    Section 13.5 states, in part, as follows:

"Sec. 5-13.5. Lien on real property interests. The State shall have a lien on all legal and equitable interests of recipients in real property, whether vested or contingent, including legal and equitable rights and interests of the recipient to coal, gas, oil, iron, and other underground mineral resources, for medical assistance paid under this Article

5

and for payments made to preserve the lien, **to the extent those liens are allowed under the federal Social Security Act.** (emphasis added)…"

31.    A copy of Section 5-13.5 of the Public Aid Code is attached hereto as Plaintiff's Complaint Exhibit 10 and is incorporated herein by reference.

32.    89 Illinois Administrative Code 102.235(e) states, in part, as follows:

"The Department shall provide the recipient with at least 10 calendar days advance notice of its intention to file a lien on the recipient's real property, based on its determination that the recipient is permanently institutionalized and of the recipient's right to request and obtain a fair hearing on this determination".

33.    A copy of 89 Illinois Administrative Code Section 102.235 is attached hereto as Plaintiff's Complaint Exhibit 11 and is incorporated herein by reference.

34.    DHS policy dictates how these above provisions are to be implemented in local HFS offices. DHS is responsible for writing and maintaining a Policy Manual[1] to be followed by caseworkers and other personnel working within the Illinois Medicaid program. A copy of WAG (Workers' Action Guide) 23-09-01-d: Filing and Renewing Lien, is attached hereto as Plaintiff's Complaint Exhibit 12 and is incorporated herein by reference.

35.    42 U.S.C. § 1396p(a)(1) provides, in part, that prior to the death of an individual who is an inpatient in a nursing home, a lien may be imposed on the real property of that individual, on account of Medicaid paid or to be paid on the individual's behalf, only after the State determines, "after notice and opportunity for a hearing (in accordance with procedures established by the State), that [*sic*] cannot reasonably be expected to be discharged from the [*sic*] and to return home…." 42 U.S.C. § 1396p (a)(1)(B)(ii).

36.    A copy of Section 1396p(a) of the Social Security Act is attached hereto as Plaintiff's Complaint Exhibit 13 and is incorporated herein by reference.

---

[1] DHS Policy Manual available online at http://www.dhs.state.il.us/page.aspx?item=13473 and Worker's Action Guide available online at http://www.dhs.state.il.us/page.aspx?item=13474.

37.    42 C.F.R. § 433.36(d) states, in part, that the state plan must specify the process

by which it will determine that an institutionalized individual cannot reasonably be expected to

be discharged from the medical institution.

38.    A copy of 42 C.F.R § 433.36 is attached hereto as Plaintiff's Exhibit 14.

39.    A portion of the actual text of 42 C.F.R. § 433.36(d) states the following:

"(d) Procedures. The State plan must specify the process by which the State will
determine that an institutionalized individual cannot reasonably be expected to be
discharged from the medical institution and return home as provided in paragraph
(g)(2)(ii) of this section.  The description of the process must include the type of notice
to be given the individual, the process by which the individual will be
given the opportunity for a hearing, the hearing procedures, and by whom and on
what basis the determination that the individual cannot reasonably be expected to be
discharged from the institution will be made.  The notice to the individual must explain
what is meant by the term lien, and that imposing a lien does not mean that the
individual will lose ownership of the home".

40.    42 C.F.R. § 433.36(g)(2)(ii) states, in part, that HFS may impose a lien only if:

"The [Medicaid] agency determines that he or she cannot reasonably be expected to be
discharged and return home.  The agency must notify the individual of its intention to
make that determination and provide an opportunity for a hearing in accordance with
State established procedures **before the determination is made** (emphasis added).
This notice to an individual must include an explanation of liens and the effect on an
individual's ownership of property."

41.    The DHS notice only provided Ms. Mack with a general notification, on the

reverse side of the HFS notice attached hereto as Plaintiff's Complaint Exhibit 2, that states the

following:

"YOU HAVE THE RIGHT TO APPEAL THIS DECISION

At any time within 60 days following the "Date of Notice" which appears on the front of
this form, you have the right to appeal this decision and be given a fair hearing.....".

## COUNT ONE
### (against Defendant Maram in his capacity as Director of the Illinois Department of Human Services)

42.     HFS, through its local office and Technical Recovery Office, failed or refused to follow the federal statute and code of federal regulations sections[2].

43.     The aforementioned sections of Illinois statute and regulations[3] are in irreconcilable conflict with the aforementioned provisions of federal law and regulation, and consequently the pertinent federal statute and regulations preempt the pertinent state statute and regulations.

## COUNT TWO
### (against Defendant Adams in her official capacity as Director of the Illinois Department of Human Services)

44.     Ms. Mack repeats and realleges each and every allegation set for forth in Paragraphs 1 through 43 as though fully set forth herein.

45.     Ms. Mack further alleges that Defendant Adams is a necessary party to this Complaint in that any ruling against HFS' actions or inactions must at the same time be binding upon DHS to prevent inconsistencies and disparities between HFS actions or inactions and DHS policymaking and application and appeals procedures in implementing this Court's ruling if this Court sees fit to rule in Plaintiff's favor

**WHEREFORE**, Plaintiff, Linda L. Mack (a/k/a Lynne L. Mack) prays for declaratory judgment and other relief against Defendants Maram and Adams as follows:

a. Declaring that the lien placed by Defendant Maram on Ms. Mack's home was and is invalid.

---

[2] 42 U.S.C. § 1396p(a)(1), 1396p(a)(1)(B)(ii), 42 C.F.R. § 433.36, 433.36(d), 433.36(g)(2)(ii)
[3] 305 ILCS § 3-10, 305 ILCS § 5-13.5, 89 Ill.Adm.Code §§ 102.235, and 102.235(e)

b. Ordering Defendant Maram to release any and all claims and/or liens on the proceeds of the sale of Ms. Mack's home that are currently being held in a TI escrow by ATG, and ordering Defendants Maram and Adams to inform ATG of said release.

c. Ordering Defendant Adams, or other individuals or entities within DHS, to modify the DHS Policy Manual, Workers Action Guide, internal memoranda, and other internal directives to the extent that this Honorable Court finds that they are in irreconcilable conflict with the federal Medicaid statute and the regulations promulgated thereunder.

d. Awarding Ms. Mack costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988 and other provisions of law.

e. Awarding Ms. Mack such other and further relief as this Court deems just, proper, and necessary.

Respectfully Submitted,

ELDER LAW OFFICE OF STEVEN C. PERLIS & ASSOCIATES

By:

_/s/ Steven C. Perlis_
STEVEN C. PERLIS,
One of Plaintiff's attorneys

STEVEN C. PERLIS
HELEN MESOLORAS
ELDER LAW OFFICE OF STEVEN C. PERLIS & ASSOCIATES, P.C.
3345 N. Arlington Heights Road, Suite D
Arlington Heights, IL 60004-1531
Attorneys' Phone No. 847-818-1138
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

STEVEN C. PERLIS, one of the attorneys of record for Plaintiff Mack, hereby certifies that he caused a copy of the foregoing **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF** to be served by the Court's ECF/electronic mailing system upon the following:

John E. Huston
Christopher S. Gange
Assistant Attorneys General
160 N. LaSalle Street, Suite N-1000
Chicago, Illinois 60601
Attorneys for Defendant Barry S. Maram
(in his official capacity as Director of
the Illinois Department of Healthcare and Family Services)

James A. Lang
Assistant Attorney General
100 W. Randolph St., 13th Fl.
Chicago, IL 60601
Attorney for Defendant Carol S. Adams
(in her official capacity as Secretary of
the Illinois Department of Human Services)

_____ */s/ Steven C. Perlis*_____

## LIST OF EXHIBITS

1. Attorneys' Title Guaranty Fund, Inc. - Personal Undertaking With Title Indemnity Deposit Agreement

2. Illinois Department of Healthcare and Family Services - Notification of Intent To File a Lien

3. Illinois Department of Public Aid – Notification of Lien

4. State of Illinois Department of Healthcare and Family Services – Lien

5. Letter dated November 29, 2006, from Steve Bozee, Field Consultant, Liens and Estate Unit

6. Closing Statement for 1653 Tahoe Circle Drive, Wheeling, Illinois

7. Settlement Statement for 1653 Tahoe Circle Drive, Wheeling, Illinois

8. Letter dated January 5, 2007, from Daniel Leikvold, HFS Assistant General Counsel

9. Illinois Public Aid Code § 3-10 [305 ILCS 5/3-10]

10. Illinois Public Aid Code § 5-13.5 [305 ILCS 5/5-13.5]

11. 89 Illinois Administrative Code § 102.235

12. Department of Human Services WAG (Workers Action Guide) Section 23-09-01-d

13. Social Security Act § 1396p(a) [42 U.S.C. §1396p(a)]

14. 42 C.F.R. § 433.36

# EXHIBIT 1

ATTORNEYS' TITLE GUARANTY FUND, INC.

# PERSONAL UNDERTAKING WITH TITLE INDEMNITY DEPOSIT AGREEMENT

Attorneys' Title Guaranty Fund, Inc. (ATG$^{*}$) is about to issue its title insurance policy with respect to the land described in ATG's

Commitment to Insure: OMC _06060090008 7_

ATG has noted as exception(s) on Schedule B of the above commitment (all referred to as Exceptions) the following:

_# 20    ST of ILL Dep of Health Care : Family Services_

ATG has been asked to issue its title insurance policy or policies, either deleting the Exceptions or insuring against loss by reason of them.

ATG may issue either concurrently with this Personal Undertaking with Title Indemnity Deposit Agreement (the Agreement) or later and in the ordinary course of its business a title insurance policy or policies in the form or forms now or then used by ATG, either deleting the Exceptions or insuring against loss by reason of them or may be subject to liability by reason of other title companies issuing policies free of or insuring against the Exceptions.

In consideration of the issuance of the title insurance policy or policies, the undersigned, jointly and severally, for themselves, their heirs, personal representatives and assigns, covenant with ATG:

1. To forever defend and save ATG harmless from all the Exceptions, from any loss, costs, damages, attorneys' fees, and expenses of every kind that ATG may suffer, expend, or incur under, or by reason of, the title insurance policy, on account of the Exceptions, or any of them, or on account of the assertion or enforcement or attempted assertion or enforcement thereof, or of any rights existing or later arising out of, or that may at any time be claimed to exist under, the Exceptions or any of them;

2. To provide for the defense, at their own expense, on behalf of ATG and the parties to whom ATG may be liable against loss under the title insurance policy (but without prejudice to the right of ATG to defend if it elects) in all litigation consisting of actions based on any of the Exceptions that may be asserted, established, or enforced in respect to the land or any interest therein;

3. To discharge, eliminate, or satisfy all of the Exceptions by the following date: ____6/1/07____   _12/11/07 PAN_

4. That each provision of this Agreement shall be in force concerning all commitments and policies, whether issued by ATG or other title insurance companies where ATG may ultimately be liable by reason of subrogation or otherwise.

The undersigned deposits with ATG the sum of $ _35,000.00_ ____ (the Deposit). The Deposit shall be under the absolute control of ATG to indemnify ATG as provided in this Agreement.

ATG shall have the right at any time, when it shall deem it in its interest so to do, in its sole discretion to use the Deposit in such manner and in such amounts as ATG believes necessary for the discharge, elimination, or satisfaction of any of the Exceptions, or for the purpose of acquiring any Exceptions, or for the purpose of reimbursing anyone who may have removed any Exceptions, or to reimburse ATG for any and all loss, costs, damages, attorneys' fees, and expenses of every kind that ATG may incur by reason of the title insurance policy on account of the Exceptions, or on account of the assertion or enforcement or attempted assertion or enforcement thereof, or of any rights existing under or later arising out of, or that may at any time be claimed to exist under, the Exceptions or any of them. If the Deposit has been made for purposes of deleting or insuring against loss by reason of an Exception for an Illinois revenue lien or liens, ATG shall apply the Deposit in satisfaction or release of the Exception upon written demand therefor by the Illinois Department of Revenue.

In case of litigation involving this Agreement, the costs and attorneys' fees of ATG may be paid or retained by ATG out of the Deposit. If the Deposit is insufficient, the costs and attorneys' fees shall be paid by the undersigned.

FOR USE IN ALL STATES
Page 1 of 2

ATTORNEYS TITLE GUARANTY FUND, INC.

# PERSONAL UNDERTAKING WITH TITLE INDEMNITY DEPOSIT AGREEMENT
## (continued)

If ATG shall find that its liability shall have increased for any reason, ATG may call on the undersigned for an additional deposit sufficient to indemnify ATG against the increase in liability. In that event, the undersigned shall promptly pay to ATG the requested deposit.

ATG shall be under no duty to invest the Deposit. ATG shall have the power and authority to commingle the Deposit with its other Deposits. All income derived from any use that ATG may make of any Deposits under this Agreement shall belong to ATG.

In the event there are other supposed rights, interests, liens, claims, encumbrances, or defects in title in addition to the Exceptions that create liability for ATG, ATG may use the Deposit to satisfy, in whole or in part, these additional matters.

In case: (1) any of the Exceptions are removed without the use of the Deposit to the satisfaction of ATG (as to which ATG shall be the sole judge); (2) any surplus remains in the hands of ATG after it shall have reimbursed itself for all loss, damages, or disbursements; the Deposit or surplus, after deducting the costs, fees for services and attorneys' fees, if any, of ATG shall on demand be paid to:

_Lynne Mack_     Taxpayer I.D. Number: _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_

The return of the Deposit shall not be construed as a termination or release of the Agreement nor any of the undersigned's duties or obligations under this Agreement. ATG SHALL BE ENTITLED TO FIVE WORKING DAYS NOTICE PRIOR TO ANY RELEASE OF FUNDS.

ATG shall not be under any obligation to recognize any assignment of the Deposit until the original or a signed duplicate of the assignment, accepted in writing by the assignee, is deposited with and accepted in writing by ATG.

The undersigned agrees to pay a handling charge in the amount of $ _150.00_ , under this Agreement. If the Exceptions are not discharged, eliminated, or satisfied within 30 calendar days of the date set forth in paragraph (3) on the preceding page, ATG shall thereafter charge an additional handling charge to be paid out of the Deposit, or if the Deposit is insufficient, paid by the undersigned. The charge under the preceding sentence shall be $25.00 or 10% of the amount deposited, whichever sum is greater, per year, or any part thereof.

The Deposit is for the purpose of security for the undersigned's performance of this Agreement. ATG's possession of the Deposit does not create any fiduciary obligation on the part of ATG for the benefit of the undersigned or any other party.

The failure of ATG to demand the performance by the undersigned of any duty or obligation under this Agreement shall not be construed as a waiver of ATG's right to demand performance at any later time. This Agreement is solely between ATG and the undersigned and is not intended to be nor shall it be construed to be for the benefit of any third party. This Agreement constitutes the entire agreement of and between ATG and the undersigned. Should any provision of this Agreement be held invalid or unenforceable by any court of competent jurisdiction, such finding shall not invalidate or render unenforceable any other provision contained herein.

Entered into this:

_27_ day of _November_ , _2006_
Day    Month    Year

_____       _____
Signature                               Signature

_32 w Busse Ave_      _____
Address                                    Address

_Mt Prospect Il 60056_      _____
City, State, Zip                             City, State, Zip
_847-577-8310_

Accepted by ATG

By: _Julia Pledge_ _____

ATG FORM 3011
© ATG (REV. 12/99)

FOR USE IN ALL STATES
Page 2 of 2

**EXHIBIT 2**

**HFS** Healthcare and
Family Services

Ron K. Blagojevich, Governor

Bureau of Collections
Technical Recovery Section
2200 Churchill Road, Building A
Springfield, Illinois 62702-3406

Telephone: (217) 785-8711
TTY: (800) 526-5812

NOTIFICATION OF INTENT TO FILE A LIEN
09/29/2006

Lynne Mack
Brentwood North Nsg/Rehab
3705 Deerfield Road
Riverwoods, IL 60015

RE: 93-057-090756

We are writing to advise you that under State Law (305 ILCS 5/3-10 and/or 5/5-13.5), the Illinois Department of Healthcare and Family Services has the right to place a lien on real property you own. A lien is a legal claim on the real property. The Department places a lien on real property when:

* a person receives old age, blind or disability cash assistance; or

* a person receives old age, blind, or disability medical assistance and, because he or she has lived in one or more medical institutions for at least 120 calendar days, the Department presumes that he or she cannot reasonably be expected to be discharged and return home.

The lien is filed on homestead and non-homestead property. The amount of the Healthcare and Family Services lien is equal to:

* the amount of cash assistance paid out in your behalf; or

* if you live in a medical institution, the amount of medical assistance paid out in your behalf.

Because you have lived in a medical institution for at least 120 days, we presume you cannot reasonably be expected to be discharged and return home. Consequently, we intend to file a lien against your real property. This does not mean any action to sell your property will occur; rather, it means that if at any time there is a transfer of title to the real property (for example, when the property is sold or mortgaged), the Department will be paid on its lien.

If you do not understand this notice, talk to your caseworker or a person who can explain it to you. Your local Department of Human Services office telephone number is (847)336-4067.

John W. Jordan

Technical Recovery Manager

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

HFS 3419A (R-7-99)

IL478-2232

This action will not be taken if you can show that it is wrong. You may meet with a representative from your local DHS office to question this action. This meeting would be informal and you may present information or evidence. You may be represented by the person or persons of your choice. Whether or not you have such a meeting, you will still have the right to appeal the intended action.

## YOU HAVE THE RIGHT TO APPEAL THIS DECISION

At any time within 60 days following the "Date of Notice" which appears on the front of this form, you have the right to appeal this decision and be given a fair hearing. Your appeal request must be filed in writing or by calling (Toll Free) 1-800-435-0774. At the appeal hearing, you may represent yourself or be represented by anyone else such as a lawyer, relative or friend. Your local DHS office will provide you with an appeal form and will help you fill it out if you wish.

To apply for free legal help:

- In the City of Chicago – Legal Assistance Foundation of Chicago (312)341-1070; Outside the City of Chicago - consult your local telephone directory for the number of the nearest legal services office:
- In Cook County, outside the City of Chicago – Cook County Legal Assistance Foundation, Inc.;
- In Northern Illinois – Prairie State Legal Services or West Central Illinois Legal Assistance;
- In Southern Illinois – Land of Lincoln Legal Assistance Foundation, Inc.

**EXHIBIT 3**

# Illinois Department of Public Aid

## NOTIFICATION OF LIEN

93-057-90756
**CASE NUMBER**

Lynne Mack
c/o Brentwood North Nursing + Rehab.
3705 Deerfield Rd.
Riverwoods, IL 60015

RE: Document 0630418095

We are writing to advise you that under State Law (305 ILCS 5/3-10 and/or 5/5-13.5), the Department of Public Aid must place a lien on real property when:

• a person receives old age, blind, or disability cash assistance; or

• a person receives old age, blind, or disability medical assistance and has lived in one or more medical institutions for at least 120 calendar days.

The lien is filed on homestead property and non-homestead property. The amount of the Department of Public Aid lien is equal to:

• the amount of cash assistance the Department pays out in your behalf; or

• the amount of medical assistance paid out in your behalf while you reside in a medical institution.

The Department of Public Aid has taken the following action:

☒ Filed an initial lien against your real property.

☒ Included in the lien already filed on your real property the amount of medical assistance paid out in your behalf while you reside in a medical institution.

This does not mean any action to sell your real property will occur; rather, it means that if and when the property is sold, Public Aid will be paid on its lien.

A copy of the lien filed against your real property is enclosed for your records.

If you have any questions, please contact your local Department of Human Services office.

ILLINOIS DEPT. OF HUMAN SERVICES
LAKE COUNTY
3235 WEST BELVIDERE ROAD
PARK CITY, ILLINOIS 60085-6017

Vicorta Yanelli
*Local Office Administrator*

Local Office Stamp

DPA 3419 (R-10-99)

1L478-2241

**EXHIBIT 4**

STATE OF ILLINOIS
DEPARTMENT OF
HEALTHCARE AND FAMILY SERVICES

NOTICE AND CLAIM OF LIEN

[X] INITIAL LIEN

[ ] RENEWAL

*COPY*

Doc#: 0630418095 Fee: $26.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 10/31/2006 03:00 PM Pg: 1 of 1

DATE OF INITIAL LIEN
[            ]

Notice is hereby given that I, Linda Shumate, Acting, acting in my official capacity of Local Office Administrator for the County of Cook, State of Illinois, and my successors in office, hereby claim and intend to hold a lien on the following described real estate, to-wit:

Unit 2-10-01 together with its undivided percentage interest in the common elements in Tahoe Village Condominium as delineated and defined in the Declaration recorded as Document Number 22270823, as amended from time to time, in the North 1/2 of the South 1/2 of Section 9, Township 42 North, Range 11, East of the Third Principal Meridian, in Cook County, Illinois.

Property address: 1653 Tahoe, Wheeling, IL
PIN: 03-09-308-096-1138

A legal or equitable interest in said described real estate is owned by:
CLIENT NAME: **LYNNE MACK**                                          CASE ID #: **93-057-090756**
ADDRESS: Brentwood North Nsg/Rehab, 3705 Deerfield Road, Riverwoods, IL 60015
This lien is claimed for all assistance paid to or on behalf of said client, under Article III and/or Article V of the Illinois Public Aid Code, and for payments made to preserve the said lien in accordance with statutory provisions.

DATE: 10/30/06     *Linda M. Shumate*
                   LOCAL OFFICE ADMINISTRATOR

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -      PREPARED BY AND RETURN TO:
                                                                STEVE BOZEE
State of Illinois          }                                    Field Consultant - Liens and Estates
                           } SS                                 3235 Belvidere Road
County of Cook             }                                    Park City, Illinois 60085

I, ESTELL HARDIMAN _____, Notary Public do hereby certify that Linda Shumate, Acting, Local Office Administrator, personally known to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that she/he signed the said instrument as required by law, for the uses therein set forth.

Given under my hand and seal this
30 day of October, A.D. 2006

*Estell Hardiman*
Notary Public

```
OFFICIAL SEAL
ESTELL HARDIMAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 01-21-07
```
(SEAL)

HFS 237 (R-3-2000)

IL478-0208

Box 348

**EXHIBIT 5**

# HFS
ILLINOIS DEPARTMENT OF
Healthcare and
Family Services

Rod R. Blagojevich, Governor
Barry S. Maram, Director

Bureau of Collections
Technical Recovery Section
3235 Belvidere Rd.
Park City, Illinois 60085-6017

Telephone: (847) 336-4067
TTY: (800) 526-5812
Fax: (847) 336-7286

November 29, 2006

Steve Perlis, Attorney At Law
3345 N Arlington Heights Road, Suite D
Arlington Heights, IL 60004

Case Name: Mack, Lynne
Case Number: 93-057-090756
Property Address: 1653 Tahoe, Wheeling, IL

Dear Mr. Perlis,

In response to your recent request, we are advising you that the actual amount of cash and/ or medical assistance issued to Lynne Mack during the period of February 2006 through 11/29/2006 is $22,861.26.

Upon payment of the above to the Illinois Department of Healthcare and Family Services, a release will be issued for all liens the Department has filed against this property for this client, namely:

Documents (s)
0630415095

Payments should be made payable to the Illinois Department Healthcare and Family Services, and forwarded to 3235 W. Belvidere Rd., Park City, IL 60085-6017 attention: Steve Bozee, Field Consultant. **Please enclose a copy of this letter and a copy of the closing statement with your remittance.**

Sincerely,

*Steve Bozee*

Steve Bozee, Field Consultant
Liens and Estate Unit

E-mail: hfswebmaster@illinois.gov

Internet: http://www.hfs.illinois.gov/

**EXHIBIT 6**

LAW OFFICES
**NORMAN I. KURTZ, LTD.**
A PROFESSIONAL CORPORATION
32 WEST BUSSE AVENUE
MT. PROSPECT, ILLINOIS 60056

(847) 877-8310
FAX (847) 577-4316

PROPERTY:             1653 Tahoe Circle Dr., Wheeling, IL
SELLERS:              Lynne Mack
SELLERS' ATTORNEY:    Norman I. Kurtz
BUYERS:               Kimberly Mack & Michael Mollerdino
BUYERS' ATTORNEY:     Edmund Wohlmuth
DATE OF CLOSING:      November 29, 2006
DATE OF POSSESSION:   November 29, 2006

## CLOSING STATEMENT

|  | CREDIT BUYER | CREDIT SELLER |
|---|---|---|
| PURCHASE PRICE |  | $195,000.00 |
| EARNEST MONEY | $ 1,000.00 |  |
| PAYOFF - U.S. Bank through 11/30/06 | 87,834.80 |  |
| REAL ESTATE TAXES (105%) |  |  |
| 2005 (paid in full $2,423.80) |  |  |
| 2006 - 1/1/06 through 11/29/06 |  |  |
| 333 days at $6.97 per day | 2,321.01 |  |
| REVENUE STAMPS |  |  |
| State | 195.00 |  |
| County | 97.50 |  |
| ASSOCIATION ($250.00/month) |  |  |
| 11/29/06 through 11/30/06 |  |  |
| 1 days at $8.33 per day |  | 8.33 |
| TAHOE VILLAGE CONDO ASSOCIATION |  |  |
| (assessment letter) | 400.00 |  |
| UPS (payoff) | 20.00 |  |
| SELLERS' TITLE CHARGES | 1,084.50 |  |
| SELLERS' ATTORNEY'S FEES | 600.00 |  |
| SUB-TOTAL: | $ 93,552.81 | $195,008.33 |
| CASH TO BALANCE: | 101,455.52 | -0- |
|  | $195,008.33 | $195,008.33 |

APPROVED:  SELLER

APPROVED  BUYERS

*  *  *  *  *  *  *  *  *  *

### SELLER'S SETTLEMENT:

EARNEST MONEY ON DEPOSIT ......  $ 1,000.00
CASH TO BALANCE ...............   101,455.52
TOTAL PROCEEDS FROM SALE .................... $102,455.52

*less $35,000 TI escrow*
*+ $150 TI title cost*

**EXHIBIT 7**

**ATTORNEYS' TITLE GUARANTY FUND, INC**

| | | |
|---|---|---|
| 1 South Wacker | 2500 East Devon Ave | 120 West Main Street |
| 24th Floor | Suite 350 | Suite 5 |
| Chicago, IL 60606-4654 | P.O. Box 9100 | Lombard, IL 60148-5363 | Batavia, IL 62220-1554 |
| (312) 372-8361 | Champaign, IL 61826-9100 | (630) 627-7441 | (818) 277-6440 |
| | (217) 359-2000 | | |

5. ☐ VA    5. ☐ Conv Ins.    6. ☐ Seller Finance

6. File Number 060600900087
7. Loan Number 02-21-2227)

8. Mortgage Ins Case Number

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

D. Name and Address of Borrower
MICHAEL A. MOLLERDINO and KIMBERLY R. MACK

E. Name, Address, and Tax ID Number of Seller
LYNNE L. MACK
1653 Tahoe Circle Drive
Wheeling IL 60090

F. Name and Address of Lender
Hoyne Savings Bank
4786 North Milwaukee Avenue
Chicago IL 60630

G. Property Location (Complete address, including legal description, if necessary):

1653 TAHOE CIRCLE DRIVE
WHEELING, IL 60090

H. Settlement Agent Name, Address, and Tax ID Number
Attorneys' Title Guaranty Fund, Inc.
2408 Windsor Place
Champaign, IL 61820
Tax ID: 37-1222620
Closer: KATHLEEN PELLEGRINI
Place of Settlement
ATG Mount Prospect
359 West Kensington Road, Suite 102
Mount Prospect, IL 60056

I. Settlement Date
11/29/2006
Fund:

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due to Seller | $195,000.00 |
| 101. Contract Sales Price | $195,000.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $2,108.67 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. County property taxes | | 406. County property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. Special Assessment | $8.33 | 408. Special Assessment | $8.33 |
| 109. Homeowner Asc Dues 11/29/06 thru 11/30/06 | | 409. Homeowner Asc Dues 11/29/06 thru 11/30/06 | |
| 110. Flood Insurance | | 410. Flood Insurance | |
| 111. Other taxes | | 411. Other taxes | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 420. Gross Amount Due to Seller | $195,008.33 |
| 120. Gross Amount Due From Borrower | $197,114.00 | | |
| 200. Amounts Paid By Or In Behalf Of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit or earnest money | $1,000.00 | 501. Earnest money held by seller | $1,000.00 |
| 202. Principal amount of new loan(s) | $156,000.00 | 502. Settlement Charges to Seller (line 1400) | $1,597.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Loan Amount 2nd Lien | | 504. Payoff of first mortgage loan | $587,834.80 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Earnest money | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. County property taxes 01/01/06 thru 11/29/06 | $2,321.01 | 510. County property taxes 01/01/06 thru 11/29/06 | $2,321.0 |
| 211. County property taxes | | 511. County property taxes | |
| 212. Special Assessment | | 512. Special Assessment | |
| 213. Homeowner Asc Dues | | 513. Homeowner Asc Dues | |
| 214. Flood Insurance | | 514. Flood Insurance | |
| 215. Other taxes | | 515. Other taxes | $400.0 |
| 216. | | 516. Association Fees | $35,000.0 |
| 217. | | 517. Title Insanmity | $150.0 |
| 218. | | 518. T.I. Fee | |
| 219. | | 519. | $128,702 |
| 220. Total Paid By/For Borrower | $159,321.01 | 520. Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | $195,008 |
| 301. Gross Amount due from borrower (line 120) | $197,114.00 | 601. Gross Amount due to seller (line 420) | $128,702 |
| 302. Less amounts paid by/for borrower (line 220) | $159,321.01 | 602. Less reductions in amt. due seller (line 520) | $66,305 |
| 303. Cash From Borrower | $37,792.99 | 603. Cash To Seller | |

Printed at 4:35 PM November 29, 2006 H

Previous Edition is Obsolete

Division of Commission (line 700) as follows:

| Description | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
|---|---|---|
| 701. | to | $0.00 | $0.00 |
| 702. | to | | |
| 703. Commission Paid at Settlement | | | |
| 800. Items Payable in Connection with Loan | | | |
| 801. Loan Origination Fee _____ Percent  to | | | |
| 802. Loan Discount  to  Hoyne Savings Bank | $250.00 | |
| 803. Appraisal Fee  to  Hoyne Savings Bank | $100.00 | |
| 804. Credit Report  to | | |
| 805. Lender's Inspection Fee  to | | |
| 806. Application Fee  to | | |
| 807. Assumption Fee  to | | |
| 808. Document Preparation Fee  to | | |
| 809. Tax Service Fee  to | $12.50 | |
| 810. Flood Certification Fee  to  Hoyne Savings Bank | $54.17 | |
| 900. Items Required by Lender To Be Paid in Advance | | | |
| 901. Interest from 11/29/2006 to 11/30/2006  @$27.08/day | | |
| 902. Mortgage Ins Premium for months  to | | |
| 903. Hazard Ins Premium for years  to  Cook County Collector   POC (B) $3,423.50 | | |
| 904. 2005 Taxes | | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard insurance  months @  per month | | |
| 1002. Mortgage insurance  months @  per month | | |
| 1003. County property taxes  months @  per month | | |
| 1004. County property taxes  months @  per month | | |
| 1005. Special Assessment  months @  per month | | |
| 1006. Homeowner Ass Dues  months @  per month | | |
| 1007. Flood insurance  months @  per month | | |
| 1008. Other taxes  months @  per month | | |
| 1011. Aggregate Reserve Adjustment | $525.00 | $0.00 |
| 1100. Title Charges | $110.00 | $0.00 |
| 1101. Closing/Escrow Fee  to  ATG | | |
| 1102. Environmental Lien Protection Endorse.  to  ATG/Norman J. Kurtz | $110.00 | $0.00 |
| 1103. ARM Endorsement  to  ATG/Norman J. Kurtz | | |
| 1104. Condominium Blanket I Endorsement  to | $450.00 | |
| 1105. Location Note  to  Ed Wohlmuth | | $600.00 |
| 1106. Buyer's Attorney Fees  to  Norman J. Kurtz | | |
| 1107. Seller's Attorney Fees  to  ATG/Norman J. Kurtz | $250.00 | $975.00 |
| (Includes above items numbers:) | | |
| 1108. Title Charges  to ATG/Norman J. Kurtz | ▮▮▮▮ | ▮▮▮▮ |
| (Includes above items numbers:) | | |
| 1109. Lender's coverage  $186,000.00 / $280.00 | | |
| 1110. Owner's coverage  $195,000.00 / $975.00  to ATG/Norman J. Kurtz | $70.00 | $70.00 |
| 1111. Gap Risk Update | $101.00 | |
| 1200. Government Recording and Transfer Charges | | $97.50 |
| 1201. Recording Fee - Mortgage Deed $36.50 ; Mortgage $64.50 ; Releases  to ATG Fees and Transfers | | $195.00 |
| 1202. County tax stamps  Deed $97.50 ; Mortgage  to ATG Fees and Transfers | | |
| 1203. State tax stamps  Deed $195.00 ; Mortgage | | |
| 1204. City tax stamps  to | $0.00 | $58.50 |
| 1205. Record Assignment of Mortgage  to  ATG Fees and Transfers | $3.00 | $3.00 |
| 1206. Release Status Verification Fee  to  ATG Fees and Transfers | | $20.00 |
| 1207. State Regulatory Fee  to  ATG Fees and Transfers | | |
| 1208. Payoff Handling Delivery Fee | | |
| 1300. Additional Settlement Charges  to | | |
| 1301. Survey  to | | $40.00 |
| 1302. Pest Inspection  to  KATHLEEN PELLEGRINI | | |
| 1303. Courier Fee  to | | |
| 1304. | $2,105.67 | $1,997.00 |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | |

I have carefully reviewed the HUD-1 Settlement State... ...t and to the best of my knowledge and belief. It is a true an... ...ollate statements as sh...
disbursements made Case 2008 cv 03127 in this transaction. I further certify that I have received a completed copy of pages 1 to 7 of this HUD-1 Settlement
Statement. Document 19 Filed 09/02/2008 Page 29 of 45

MICHAEL A. MOLLERDINO

LYNNE L. MACK

KIMBERLY H. MACK

#### SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and
accurate account of this transaction. I have caused the funds to be disbursed
in accordance with this statement.

Settlement Agent          Date

Warning: It is a crime to knowingly make false statements to the United
States on this or any other similar form. Penalties upon conviction can
include a fine and imprisonment. For details see: Title 18 U.S. Code Section
1001 and Section 1010.

Special Instructions:

**SELLER INSTRUCTIONS:** If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal
Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form
6252, and/or Schedule D (Form 1040)

## ATTORNEYS' TITLE GUARANTY FUND, INC.

Previous Edition is Obsolete HUD-1 (3/91)

**EXHIBIT 8**

ILLINOIS D    ..../ OF
Case 1:08-cv-04322 nd  Document 19  Filed 09/02/2008  Rod R. Blagojevich, Governor  Page 31 of 45
Family Services
Barry S. Maram, Director

201 South Grand Avenue East
Springfield, Illinois 62763-0002

**Telephone:** (217) 782-1233
**TTY:** (800) 526-5812

January 5, 2007

Mr. Steven C. Perlis
3345 North Arlington Heights Rd., Suite D
Arlington Heights, Illinois 60004
www.perliselderlaw.com

Re:    Lynne Mack

Dear Steve:

This is in response to your letter requesting the Department waive its lien on property owned by your client, Lynne Mack. Your client intends to sell the property and wishes to place proceeds not used to pay for medical expenses into a pooled special needs trust.

I discussed this matter with the Department's Bureau of Collections, which handles liens for the Department. We agree that there is no basis for the Department to waive or release its lien in this case. Proceeds from the sale of property, including homestead property, are considered available to pay for the care of an individual. Such proceeds may be placed into a special needs trust, but any Department lien or charge must be satisfied first before such a trust can be exempted from consideration.

Sincerely,

Daniel C. Leikvold
Assistant General Counsel

DCL:ds

cc: Janet Steele

**E-mail:** hfswebmaster@illinois.gov        **Internet:** http://www.hfs.illlinois.gov/

**EXHIBIT 9**

305 ILCS 5/3-10

Sec. 3-10. Lien on real property interests. Subject to the provisions of Sections 3-10.1 to 3-10.10, inclusive, the State shall have a lien upon all legal and equitable interests of recipients in real property, whether vested or contingent, including legal and equitable rights and interests of the recipient to coal, gas, oil, iron and other underground mineral resources, for basic maintenance grants paid under this Article, and for payments made to preserve the lien as provided in Section 3-10.5. The lien shall attach to such interests owned or subsequently acquired by persons who were recipients on or after the effective date of this Code, and in respect to which interests a notice of lien has been recorded or filed as provided in Sections 3-10.2 and 3-10.3.

Liens recorded or filed under the provision of Article VIII-A of the 1949 Code for which the period of enforceability has not expired shall not be affected by the enactment of this Code.

**EXHIBIT 10**

305 ILCS 5/5-13.5

Sec. 5-13.5. Lien on real property interests. The State shall have a lien on all legal and equitable interests of recipients in real property, whether vested or contingent, including legal and equitable rights and interests of the recipient to coal, gas, oil, iron, and other underground mineral resources, for medical assistance paid under this Article and for payments made to preserve the lien, to the extent those liens are allowed under the federal Social Security Act. The lien shall attach to those interests owned or subsequently acquired by persons who were recipients on or after the effective date of this amendatory Act of 1993. The liens shall be recorded and filed and are otherwise subject to all the conditions of Sections 3-10.1 through 3-10.10 of this Code.

(Source: P.A. 88-85; 88-670, eff. 12-2-94.)

**EXHIBIT 11**

**89 Ill. Adm. Code 102.235 Liens on Property of Institutionalized Recipients**

a) Definitions in this Section are as follows:

1) "Institutionalized individual" — individual of any age who is an inpatient in a nursing facility or other medical institution and who must, as a condition of receiving services in the institution, apply his or her income to the cost of care.

2) "Individual's home" — dwelling with adjoining and related real estate which the individual owns and occupies, or when temporarily absent, dwelling in which the individual maintains an intent to return.

3) "Equity interest in the home" — current market value of the home less all encumbrances.

4) "Residing in the home for at least one or two years on a continuous basis" — occupancy of an individual's home by a sibling or child of the individual as a primary place of residence. During the one or two year period, the individual's home address was used by the sibling or child as his or her mailing address or as his or her address used for driver's license or voter registration purposes, and the address remained unchanged.

5) "Discharge from the medical institution and return home" — the attending physician has signed an order for discharge from the medical institution, following which the individual has returned to reside in his or her own home.

6) "Lawfully residing" — use of the property of an individual in a medical institution as the home of a spouse or a minor, blind or disabled child, or a sibling with an ownership interest in the home. Such property must be the spouse's, child's or sibling's mailing address, or his or her address used for driver's license or voter registration purposes.

b) Except as provided in subsection (c) of this Section, the Department shall file a lien on all real property, including the home of a recipient of MANG(A), (B) or (D) who it determines to be permanently institutionalized, that is, cannot reasonably be expected to be discharged and return home from a medical institution.

c) The Department will not file a lien on the home if it is occupied by the permanently institutionalized recipient's spouse, minor or disabled or blind child, or sibling who has an equity interest in the home and has legally resided in it continuously for at least one year immediately before the date the recipient was admitted to a medical institution.

d) There shall be a rebuttable presumption of permanent institutionalization when a recipient has resided for at least 120 calendar days in one or more medical institutions.

e) <u>The Department shall provide the recipient with at least 10 calendar days advance notice of its intention to file a lien on the recipient's real property, based on its determination that the recipient is permanently institutionalized, and of the recipient's right to request and obtain a fair hearing on this determination.</u>

(Source: Amended at 21 Ill. Reg. 619, effective January 1, 1997)

**EXHIBIT 12**

# WAG 23-09-01-d:  Filing and Renewing Lien

## Cash Client

Within 30 days of approving cash or within 30 days of the date the local office becomes aware of real property owned by the client:

1. *(LO)* Send Real Property Record (Form 8) to the DPA Bureau of Collections (BOC) Technical Recovery Section.  Keep a copy in the case file.

2. *(BOC)* Completes the lien filing process.

3. *(BOC)* Completes Notice and Claim of Lien (Form 237).

   a.  Files Form 237 with the County Recorder of Deeds.

   b.  Sends copy of Form 237 to the local office.

**NOTE:** When the property is located outside the county where the client is living, the lien is filed in the name of the local office administrator of the county where the property is located.

4. *(County Recorder)* Returns one copy of Form 237 to the DPA BOC Technical Recovery Section.

5. *(BOC)* Sends Notification of Lien (Form 3419) to the client within 10 calendar days of receiving Form 237 from the County Recorder.

## Medical Client in a Medical Institution

1. **(LO)** Send completed Form 8 and verifications to the DPA BOC Technical Recovery Section.

   a.  Include copies of Assessment of Assets (Form 3190) and Determination of Asset Allowance (Form 3192), if either was completed.

2. *(BOC)* Determines, based on information from Form 8, when a client has resided in a medical institution for at least 120 calendar days.

3. Sends Notification of Intent to File a Lien (Form 3419A) to the client.

4. Completes the lien filing process.

NOTE: Follow AABD Cash client steps 3 through 5.

## Filing Fees

1. (BOC) Pays all fees required to register the lien.

2. (BOC) Adds the amount of the fee to the amount of the lien.

**EXHIBIT 13**

TITLE 42--THE PUBLIC HEALTH AND WELFARE

CHAPTER 7--SOCIAL SECURITY

SUBCHAPTER XIX--GRANTS TO STATES FOR MEDICAL ASSISTANCE PROGRAMS

Sec. 1396p. Liens, adjustments and recoveries, and transfers of assets

(a) Imposition of lien against property of an individual on account of medical assistance rendered to him under a State plan

(1) No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except--
    (A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
    (B) in the case of the real property of an individual--
        (i) who is an inpatient in a nursing facility, intermediate care facility for the mentally retarded, or other medical institution, if such individual is required, as a condition of receiving services in such institution under the State plan, to spend for costs of medical care all but a minimal amount of his income required for personal needs, and
        (ii) with respect to whom the State determines, after notice and opportunity for a hearing (in accordance with procedures established by the State), that he cannot reasonably be expected to be discharged from the medical institution and to return home, except as provided in paragraph (2).

(2) No lien may be imposed under paragraph (1)(B) on such individual's home if--
    (A) the spouse of such individual,
    (B) such individual's child who is under age 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title, or
    (C) a sibling of such individual (who has an equity interest in such home and who was residing in such individual's home for a period of at least one year immediately before the date of the individual's admission to the medical institution), is lawfully residing in such home.

(3) Any lien imposed with respect to an individual pursuant to paragraph (1)(B) shall dissolve upon that individual's discharge from the medical institution and return home.

**EXHIBIT 14**

TITLE 42--PUBLIC HEALTH

CHAPTER IV--CENTERS FOR MEDICARE & MEDICAID SERVICES, DEPARTMENT OF HEALTH AND HUMAN SERVICES

PART 433 - STATE FISCAL ADMINISTRATION--Table of Contents

Subpart A.  Federal Matching and General Administration Provisions

Sec. 433.36  Liens and recoveries.

(a) Basis and purpose. This section implements sections 1902(a)(18) and 1917(a) and (b) of the Act, which describe the conditions under which an agency may impose a lien against a recipient's property, and when an agency may make an adjustment or recover funds in satisfaction of the claim against the individual's estate or real property.

(b) Definition of property. For purposes of this section, ``property'' includes the homestead and all other personal and real property in which the recipient has a legal interest.

(c) State plan requirement. If a State chooses to impose a lien against an individual's real property (or as provided in paragraph (g)(1) of this section, personal property), the State plan must provide that the provisions of paragraphs (d) through (i) of this section are met.

(d) Procedures. The State plan must specify the process by which the State will determine that an institutionalized individual cannot reasonably be expected to be discharged from the medical institution and return home as provided in paragraph (g)(2)(ii) of this section. The description of the process must include the type of notice to be given the individual, the process by which the individual will be given the opportunity for a hearing, the hearing procedures, and by whom and on what basis the determination that the individual cannot reasonably be expected to be discharged from the institution will be made. The notice to the individual must explain what is meant by the term lien, and that imposing a lien does not mean that the individual will lose ownership of the home.

(e) Definitions. The State plan must define the following terms used in this section:

(1) Individual's home.

(2) Equity interest in home.

(3) Residing in the home for at least 1 (or 2) year(s).

(4) On a continuing basis.

(5) Discharge from the medical institution and return home.

(6) Lawfully residing.

(f) Exception. The State plan must specify the criteria by which a son or daughter can establish to the agency's satisfaction that he or she has been providing care which permitted the individual to reside at home rather than in an institution, as provided in paragraph (h)(2)(iii)(B) of this section.

(g) Lien provisions--(1) Incorrect payments. The agency may place a lien against an individual's property, both personal and real, before his or her death because of Medicaid claims paid or to be paid on behalf of that individual following a court judgment which determined that benefits were incorrectly paid for that individual.

(2) Correct payments. Except as provided in paragraph (g)(3) of this section, the agency may place a lien against the real property of an individual at any age before his or her death because of Medicaid claims paid or to be paid for that individual when--

(i) An individual is an inpatient of a medical institution and must, as a condition of receiving services in the institution under the State plan, apply his or her income to the cost of care as provided in Sec. Sec. 435.725, 435.832 and 436.832; and

(ii) The agency determines that he or she cannot reasonably be expected to be discharged and return home. The agency must notify the individual of its intention to make that determination and provide an opportunity for a hearing in accordance with State established procedures before the determination is made. The notice to an individual must include an explanation of liens and the effect on an individual's ownership of property.

(3) Restrictions on placing liens. The agency may not place a lien on an individual's home under paragraph (g)(2) of this section if any of the following individuals is lawfully residing in the home:

(i) The spouse;

(ii) The individual's child who is under age 21 or blind or disabled as defined in the State plan; or

(iii) The individual's sibling (who has an equity interest in the home, and who was residing in the individual's home for at least one year immediately before the date the individual was admitted to the medical institution).

(4) Termination of lien. Any lien imposed on an individual's real property under paragraph (g)(2) of this section will dissolve when that individual is discharged from the medical institution and returns home.

(h) Adjustments and recoveries. (1) The agency may make an adjustment or recover funds for Medicaid claims correctly paid for an individual as follows:

(i) From the estate of any individual who was 65 years of age or older when he or she received Medicaid; and

(ii) From the estate or upon sale of the property subject to a lien when the individual is institutionalized as described in paragraph (g)(2) of this section.

(2) The agency may make an adjustment or recovery under paragraph (h)(1) of this section only:

(i) After the death of the individual's surviving spouse; and

(ii) When the individual has no surviving child under age 21 or blind or disabled as defined in the State plan; and

(iii) In the case of liens placed on an individual's home under paragraph (g)(2) of this section, when there is no--

(A) Sibling of the individual residing in the home, who has resided there for at least one year immediately before the date of the individual's admission to the institution, and has resided there on a continuous basis since that time; or

(B) Son or daughter of the individual residing in the home, who has resided there for at least two years immediately before the date of the individual's admission to the institution, has resided there on a continuous basis since that time, and can establish to the agency's satisfaction that he or she has been providing care which permitted the individual to reside at home rather than in an institution.

(i) Prohibition of reduction of money payments. No money payment under another program may be reduced as a means of recovering Medicaid claims incorrectly paid.

[43 FR 45201, Sept. 29, 1978, as amended at 47 FR 43647, Oct. 1, 1982; 47 FR 49847, Nov. 3, 1982]